**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re:                                                          Chapter 11
                                                               Case No.: 17-40473 (NHL)
   GLOBAL UNIVERSAL GROUP, LTD.,


                              Debtor.
------------------------------------------------------------X

### SECOND AMENDED DISCLOSURE STATEMENT IN CONNECTION WITH DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN

---

**THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED FOR APPROVAL BY THE BANKRUPTCY COURT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE BUT HAS NOT YET BEEN APPROVED.  A COMBINED HEARING TO CONSIDER APPROVAL OF THIS DISCLOSURE STATEMENT AND CONFIRMATION OF THE DEBTOR'S CHAPTER 11 PLAN IS SCHEDULED FOR _____ ___, 2017 AT _____ __.M.  A COPY OF THE DEBTOR'S PLAN IS INCLUDED WITH THE DISCLOSURE STATEMENT AS EXHIBIT "A"**

---

Dated: Roslyn, New York
          May 29, 2017

SPENCE LAW OFFICE, P.C.
Attorneys for the Debtor
Robert J. Spence, Esq.
55 Lumber Road, Suite 5
Roslyn, New York 11576
(516) 336-2060

---

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY.  THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR RIGHTS UNDER THE DEBTOR'S CHAPTER 11 PLAN WHICH IS ATTACHED TO THIS DISCLOSURE STATEMENT**

---

Global Universal Group, Ltd.  (the "Debtor") respectfully submits this Second Amended Disclosure Statement (the "Disclosure Statement"),  pursuant to section 1125 of the Bankruptcy Code, to accompany the Debtor's Second Amended Chapter 11 Plan,  dated May 29, 2017 (the "Plan"), which has been filed with the United States Bankruptcy Court  for the Eastern District of New York (the "Bankruptcy Court").  A copy of the Plan is annexed  hereto as **Exhibit "A".**  Capitalized terms contained in this Disclosure Statement, which are not otherwise defined herein, will have the meaning ascribed to such terms in the Plan.

## ARTICLE I.

## DESCRIPTION OF THE DISCLOSURE STATEMENT

### A.  Overview

The purpose of this Disclosure Statement is to provide creditors and equity holders of the Debtor with adequate information to enable them to make an informed judgment concerning the Plan.  The Plan is the document that contains the exclusive and final statement of the rights of the Debtor, its creditors, equity holders and other interested parties, and sets forth what, if anything, each of those groups will receive on account of their respective Claims and Interests and how they will receive it.  It is strongly recommended that the Plan be read in its entirety. The Disclosure Statement is not a substitute for reading the Plan in full as the Disclosure Statement simply describes the Plan and provides information about the Debtor and the Chapter 11 Case.  If the Bankruptcy Court confirms the Plan, it will become binding on the Debtor, all creditors, equity holders and other interested parties.

You are also urged to read the contents of the Disclosure Statement in order to determine what rights you may have to vote on or object to the Plan and before making any decision on any such course of action.  Particular attention should be directed to the provisions of the Plan affecting or impairing your rights as they existed before the institution of this Case.  Please note, however, that this Disclosure Statement cannot tell you everything about your rights.  For instance, this Disclosure Statement cannot and does not provide a complete description of all applicable provisions of the Bankruptcy Code or other matters that may be deemed significant by creditors, equity holders, and other parties in interest.  You are also encouraged to consult with your lawyers and/or advisors as you review and consider the Disclosure Statement and the Plan to enable you to obtain more specific advice on how the Plan will affect you.

Only creditors and interest holders whose claims or interests are impaired under a chapter 11 plan have the right to vote to accept or reject a plan.  Generally speaking, a claim or interest is

impaired if a plan alters the legal, contractual or equitable rights of the holder of the claim or interest.  An impaired class of creditors accepts the plan when creditors holding two-thirds in amount of such class and more than one-half in number of the claims in such class who actually cast their ballots vote to accept the plan.  An impaired class of interests accepts the plan when interest holders holding two-thirds in amount of such class who actually cast their ballots vote to accept the plan.

In this Chapter 11 Case, the Plan contains seven (7) Classes of Claims and one (1) Class of  Interests.  Classes 6 and 7 are impaired as the Plan alters  the legal, contractual and equitable rights of the holders of such Claims and Interests.
Accordingly, votes on the Plan will be solicited from Classes  6 and 7.

The Debtor  submits that the information contained herein is of the kind, and is sufficiently  detailed, to enable a hypothetical, reasonable investor typical of the class being solicited, if any,   to make an informed judgment concerning the Plan.

## B.  Confirmation Procedures

On June 1, 2017, the Bankruptcy Court conditionally approved this Disclosure Statement. The Bankruptcy Court has scheduled a hearing to consider final approval of this Disclosure Statement and Confirmation of the Plan for ———–, July 20, 2017 at ———–3:00 p.m. (the "Confirmation  Hearing").  Holders of Claims and Interests and other parties in interest may attend this hearing.  Objections to confirmation of the Plan or to final approval of the Disclosure Statement, if any, must be in writing and filed with the Bankruptcy  Court and served, so as to be received no later than ———–, July 13, 2017 at 4:00 p.m., upon:

SPENCE LAW OFFICE, P.C.
Attorneys for the Debtor
Attn: Robert J. Spence, Esq.
55 Lumber Road, Suite 5
Roslyn, New York 11576

and any other parties entitled to receive notice under the Federal Rules of Bankruptcy Procedure the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York including, without limitation, the Office of the United States Trustee for the Eastern District of New York, Debtor's counsel and all parties who have filed a Notice of Appearance pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.

## C.  Representations and Limitations

**No person is authorized by the Debtor in connection with the Plan to give any information or to make any representation other than as contained in this Disclosure Statement and the exhibits annexed hereto or incorporated herein by reference or referred to herein, and if given or made, such information or representation may not be relied upon as having been authorized by the Debtor.**

**No representations concerning the Debtor or the Plan are authorized other than as**

set forth herein.  Any representations other than as contained herein should not be relied upon by you.

The information contained herein has been prepared by the Debtor in good faith, based upon unaudited information available to the Debtor as of the date hereof.  Although the Debtor has used its best efforts to ensure that such information is accurate, the information contained herein is unaudited.  The Debtor believes that this Disclosure Statement complies with the requirements of the Bankruptcy Code.

The statements contained in this Disclosure Statement are made as of the date hereof, unless another time is specified herein, and delivery of this Disclosure Statement shall not create any implication that there has been no change in the facts set forth herein since the date of this Disclosure Statement and the date the materials relied upon in preparation of this Disclosure Statement were compiled.

The Disclosure Statement may not be relied on for any purpose other than in connection with the confirmation of the Plan, and nothing contained herein shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or be deemed conclusive advice on the tax or other legal effects of the plan on holders of claims against or an interest in the Debtor.

The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself.  Each creditor and interest holder is encouraged to read, consider and carefully analyze the terms and provisions of the plan.

The Debtor believes that this Disclosure Statement contains information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of holders of claims and interests of relevant classes to make an informed judgment concerning whether to vote for or against the Plan.  The Bankruptcy Court has not verified the accuracy or completeness of the information contained herein.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable non-bankruptcy law. Persons or entities holding or trading in, or otherwise purchasing, selling or transferring claims against the Debtor should evaluate this Disclosure Statement in light of the purpose for which it was prepared.

This Disclosure Statement and the Plan provide for injunctive relief as to the Debtor.  The permanent injunctions set forth in the Plan will apply to  holders of any claim, interest, lien, encumbrance or debt, whether secured or unsecured,  granted priority status, including priority tax (federal or state), non-priority unsecured  claim or any interest in the Debtor.  Creditors and interest holders will be bound by these  injunctive provisions unless creditors timely file objections in accordance with the

**provisions set forth in the Disclosure Statement order or herein and appear at the Confirmation Hearing, to prosecute any objection.**

**ARTICLE II.**
**BACKGROUND**

**A.  The Debtor, its Business and its Assets**

The Debtor is a corporation organized under the laws of the State of New  York whose shareholders are David Wong and James Wong (the "Shareholders").

The Debtor's primary asset is a fee simple interest in that certain multi-space commercial real property located at 34-20 Linden Place, Flushing, New York 11354 (the "Property').

**1.  The Debtor's Acquisition of the Property**

In 2001, the Debtor acquired the Property for the sum of approximately $2,525,000.00. The Property was paid for by the Debtor with cash and a purchase money mortgage from Asia Bank NA.  In 2004, the Debtor refinanced with Woori Bank in the principal amount of $4,800,000.00 and again with Woori Bank in 2006 for $9,100,000.00 through a CEMA (consolidation, modification and extension agreement) (the "2006 CEMA").  The Woori Bank Note and Mortgage from the 2006 CEMA were assigned multiple times and the Note and Mortgage are currently alleged to ~~currently~~ be in the possession of 33-37 Farrington, LLC ("Farrington") who acquired the loan in or about January 2016.  (See below discussion of Farrington's acquisition of the note and mortgage and the Debtor's separate and distinct claims against Farrington, et al., in the State Court Action).  Farrington contends that the current balance owed on the Note is $16,680,634.10 through April 30, 2017.  However, Farrington includes over $200,000 in additional attorneys fees over and above the $26,500 awarded in the Foreclosure Judgment.   At a minimum, the Debtor disputes the additional attorney's fees.  (The Debtor disputes a great deal more of the indebtedness in the Foreclosure Appeals and Referee Appeal).

Since acquiring the Property in 2001, the Debtor and the Debtor's principals invested approximately $15,000,000 in renovating the Property in order to entice high quality tenants to lease the 73,000 square feet of rentable space.  The rentable area consists of one commercial space and one community facility space.

The Property has been appraised by CBRE and, as of December 21, 2016, it is estimated in that appraisal to have a fair market value of $21,400,000.00.  A copy of the "Appraisal Report" dated January 16, 2017 is annexed hereto as **Exhibit "B."**

**2.  Rental Income**

The Property contains a total of 2 rental units – one commercial and one for a community facility rental.  Both units are currently occupied.  Copies of the Leases for these Tenants are annexed hereto as **Exhibits "C" and  "D."**  Based on the current monthly rents, the total

monthly rental income for the Property is $99,972 or $1,199,664 per year.[1]  The foregoing is summarized as follows:

| Unit | Unit Type | Current Monthly Rent | Lease Expiration |
|---|---|---|---|
| 1st Fl | Community | $24,972 | 10/31/2024 |
| 1st and 2nd Fl | Community/commercial | $75,000 | 7/31/2026 |

The leases are triple net leases so the tenants are responsible for the rent, utilities, insurance and their proportionate share of taxes.  The Current estimated operating expenses of $23,533.00 per month or $282,396.00 per year are  as follows:

| Expenses | Amount | Paid by Tenants |
|---|---|---|
| Real Estate Taxes | 16,700 | yes |
| Water/Sewer | 2,000 | yes |
| Insurance | 2,333 | no |
| Gas (heat) | Unk -Paid by tenants | yes |
| Electric | Unk-Paid by tenants | yes |
| Maintenance (est) | 2500 | no |
| Management[2] | 0 | no |

### 3.  The Debtor's Claim Against Farrington

In 2015, the Debtor was looking to sell the Property in order to satisfy the then lender, SDF 19 Linden LLC ("SDF"), a successor to Woori Bank on the note and mortgage from the 2006 CEMA.  In or about October 2015, the Debtor had entered into a contract of sale with Linden Center LLC and had simultaneously been negotiating a "short-satisfaction" with SDF.   Needing assurances to cover the conditions of a "drop dead date" from SDF just in case Linden Center LLC was unable to timely close, Global Universal was introduced to J & B Grand Land Realty ("J&B") as a potential provided of bridge financing to satisfy SDF.  On or about November 25, 2015, the Debtor presented an agreement to J&B entitled "*NON-DISCLOSURE AGREEMENT BETWEEN J & B GRAND LAND REALTY LLC AND GLOBAL UNIVERSAL GROUP, LTD*" (the "NDA").  The Debtor, J & B and the following persons signed the NDA:  Liu Yun Chen, Xian Feng ("Bill") Zou, Esq., Andy Chan (aka "Wing Fung Chan"), Amy Shi, Wilson Shum, and Lana Choy (Summit Associates).  Thereafter, the Debtor spent three weeks of negotiations with J & B for a bridge loan and allowed J & B and the entities and persons who signed the NDA, access to confidential information, including but not limited to: access to the Property and meetings with tenants and disclosure of confidential information regarding Global Universal's financials, confidential information regarding payoff negotiations with SDF and Global Universal's contract of sale of the Property to Linden Center LLC.

Unbeknownst to the Debtor, on information and belief, Wing Fung Chan, Liu Yun Chen, and Xian Feng Zou, Esq. formed 33-37 Farrington LLC on December 16, 2015 for the sole

---

[1] The previous Tenant on the second floor failed to pay its rent from January 2017 to April 2017.  The Debtor has located another tenant for this space at the same rent.

[2] The Property is managed by David Wong who is not currently taking a salary but~~y~~ estimates his salary at $2,500 per month under normal circumstances.

purpose of purchasing the note and mortgage from SDF.  In or about January 2016, Farrington finalized the purchase of the mortgage note from SDF in direct competition with Global Universal and in clear violation of the NDA.   According to discovery provided by Farrington, Hui Chen, Song Lin and Yao Zhang – known associates and relatives of the parties who signed the NDA - are members of Farrington.

The NDA, at a minimum required Wing Fung Chan, Liu Yun Chen, and Xian Feng Zou to hold and maintain the confidential information for the sole and exclusive benefit of the Debtor. Certainly, that meant that they were not supposed to pose as lenders to provide a bridge loan and then proceed to purchase the subject loan for their own benefit.

The Debtor submits that but for the breach of the NDA by the Farrington parties, the Debtor would have closed the loan with Linden Center LLC and received a surplus of approximately $6,000,000.00 and avoided, at a minimum, another year of defending the Foreclosure Action and the filing of this bankruptcy case.

On or about January 27, 2017, the Debtor commenced a lawsuit in Supreme Court, Queens County, against Farrington and its members, its counsel, its broker and affiliates entitled *Global Universal Group Ltd. v. Wing F Chau, Hui Chen, Liu Y Chen, Song Lin, Yao Zhang, Xian F Zou, 33-37 Farrington LLC, J & B Grand Land Realty LLC, Maxim Credit Group, LLC* (Index No. 701351) (the "State Court Action").   *Wing F Chau, Hui Chen, Liu Y Chen, Song Lin, Yao Zhang, Xian F Zou, 33-37 Farrington LLC, J & B Grand Land Realty LLC* and *Maxim Credit Group, LLC, and any affiliates, members, officers, shareholders, brokers, representatives of any of the foregoing entities, a*re hereinafter collectively referred to as the "Farrington Parties."  The causes of action include breach of contract, tortious interference with economic relations, specific performance and attorneys fees.  The State Court Action was not subject to the automatic stay provisions of 11 U.S.C. §362.

On May 26, 2017, the Debtor filed a Notice of Discontinuance of the State Court Action pursuant to NY CPLR §3217.  This is a voluntary discontinuance and is without prejudice to the Debtor's right to file another lawsuit based on the same facts.  The Debtor plans to pursue the claims set forth in the State Court Action and other claims related to the facts set forth in the State Court Action **(the "Claims Against the Farrington Parties")** before and after the confirmation of a Plan and the proceeds therefrom will benefit the estate and the Reorganized Debtor.  The Debtor first intends to take discovery to determine, at a minimum, which entities or persons profited as a result of the breach of the NDA and which entities or persons acted in breach of the NDA.


**B.  The 2012 Foreclosure Action and Foreclosure Judgment**

In 2012, SDF commenced an action to foreclose the 2006 CEMA mortgage in the State Court (the "Foreclosure Action"). The records of the Office of City Register, New York City Department of Finance reflect that Woori assigned the 2006 CEMA mortgage to SDF 19 Linden LLC on November 28, 2012.  SDF then assigned its rights in the 2006 CEMA mortgage and as assignor of leases and rents to Sterling Real Estate Holding Company Inc. (Leases and Rents) and Sterling National Bank (Mortgage) on April 8, 2013 and June 30, 2014 respectively.  In connection with Farrington's unseemly purchase of the assignment(s), Sterling National Bank reassigned the 2006 CEMA Mortgage back to SDF on January 22, 2016.   The records do not show a reassignment of the leases and rents from Sterling Real Estate Holding Company, Inc. back to SDF.  Nonetheless, SDF assigned the mortgage and leases and rents to Farrington that same day, January 22, 2016. Farrington simultaneously assigned the mortgage and leases and rents to Maxim Credit Group, LLC ("Maxim").   All of the foregoing assignments in connection with the transfer to Farrington, were not recorded with the County Clerk until June 8, 2016.  Annexed hereto as **Exhibit E** is an

excerpt from a title search setting forth the information obtained from the New York City records for the mortgages and assignments related thereto concerning the Property. Because of the assignment to Maxim, the Debtor is disputing whether Farrington even has standing to appear and to be heard in this Chapter 11 case.

On or about November 14, 2013, the State Court issued an order of reference (the "Order of Reference") in the Foreclosure Action. Thereafter, the court appointed referee submitted his report in September 29, 2014, wherein he determined that principal of $7,022,935.52 was owed by the Debtor on account of the CEMA as of the date of default in 2011. He also determined that interest prior to the default from 3/1/11-5/1/11 at the rate of 2.75% was due in the amount of $33,261.14 (62 days @ $536.47/day) and interest after default for the period 5/2/11-3/20/14 at the rate of 18% was due in the amount of $3,701,089.38 (1,054 days @ $3,511.47/day). On December 6, 2016, the Court signed the amended judgment of foreclosure (the "Farrington Foreclosure Judgment") which was entered on December 13, 2016. The Farrington Foreclosure Judgment awarded Farrington a judgment in the amount of $10,757,286.04 with interest thereon at $3511.47/day (which is the default rate of 18%) from March 20, 2014 along with attorneys fees of $26,465.00 and other costs of $550.00. Based on the foregoing, the Farrington secured claim as of the date of this Disclosure Statement should be approximately $14,500,000, subject to allowance by the Court, plus any disbursements made for real estate taxes and insurance for which Farrington can prove payment.

## C. The Debtor's Appeal of the Order Confirming the Referee's Report and the Farrington Foreclosure Judgment

On or about January 9, 2017, the Debtor timely filed a notice of appeal of the Farrington Foreclosure Judgment in the New York Appellate Division, Second Department and had previously appealed the original judgment obtained by SDF19 LLC (the "Foreclosure Appeals"). The Debtor believes that numerous irregularities occurred in the Foreclosure Action, and that the amount of the Farrington Foreclosure Judgment was improper and excessive. The Foreclosure Appeals had not been perfected prior to the ~~Filing~~ Petition Date.

In or about December 2015, the Debtor appealed the State Court's Order confirming the Referee's Report wherein the Referee awarded Farrington's predecessor, SDF19 LLC, the default rate of interest of 18% from April 1, 2011 (the "Referee Appeal"). The Referee Appeal focuses on the allowance of the default rate of 18% when Plaintiff had not provided evidence of the election to charge a default rate (let alone an 18% default rate). The Referee Appeal is perfected and fully briefed and submitted. Debtor submits on appeal that the Plaintiff failed to provide evidence that the rate was increased by the Plaintiff post-default. The applicable language of the Note states that the lender "<u>may</u>" increase the Interest Rate otherwise payable and that the interest rate "can" increase to 18%. However, the words "if" you declare a default and you "may" increase and "can" increase all required evidence to show that Woori, another of Farrington's predecessors, declared a default and increased the interest rate. Instead, the Debtor claims that the Referee took it upon himself to award the 18% default rate and did not base the award on any actual evidence. The Debtor believes this is clear reversible error.

The Chapter 11 Filing Stayed the Foreclosure Sale, the Foreclosure Appeals and the Referee Appeal. While the foregoing appeals were pending, a foreclosure sale of the Property was scheduled for February 3, 2017. The Debtor filed its Chapter 11 petition on February 2, 2017, which stayed that sale.

### D. The Specific Performance Lawsuit by Linden Center LLC

Because of the Debtor's inability to close, Linden Center LLC commenced an action in Queens Supreme Court for, among other things, breach of contract and specific performance. After significant motion practice, the parties reached a settlement wherein Linden Center LLC was awarded specific performance on renegotiated terms and conditions. The sale terms were memorialized in a certain Stipulation of Settlement by and between Debtor and Purchaser dated November 29, 2016 and filed in the Specific Performance Action. A copy of the Stipulation dated November 29, 2016, accompanying Agreement dated November 10, 2016 and a separate Sale Agreement dated April 19, 2017 (incorporating by reference both prior agreements) are annexed hereto as **Exhibit F**.

### ARTICLE III.
### SIGNIFICANT EVENTS IN THE CHAPTER 11 CASE

### A. The Debtor's Schedules and Statement of Financial Affairs

On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities (as amended, the "Schedules") and its Statement of Financial Affairs.

On Schedule A, the Debtor valued the Property at $21,500,000.00.

On Schedule B, the Debtor listed personal property in the aggregate amount of $123,413.00 which is summarized as follows:

| Type of Property | Value |
|---|---|
| Checking Account (controlled by Receiver) | $55,463 |
| Security Deposit | $67,950 |
| Claims against the Farrington Parties. | $unknown |

On Schedule D, the Debtor listed the following three (3) secured creditors:

| Creditor | Amount |
|---|---|
| Farrington (disputed) | $14,341,283 |
| NYC Department of Finance (RE Taxes) | $99,566.20 |
| NYCTL 2016 A Trust (RE taxes) | $203,995.99 |

### B. The Return of Funds Distributed to the Debtor's Principal.

Prior to the filing of the bankruptcy case, on or about December 27, 2016, David Wong received a distribution of $1,160,000.00. This distribution was disclosed in the Statement of Financial Affairs. At the status conference before the Court on February 23, 2017, the Court directed that Mr. Wong deposit the funds back into the Debtor's DIP account. On February 24, 2017, Mr. Wong, without admitting any wrongdoing on his part, complied with the Court's directive and deposited the $1,160,000 into the Debtor's DIP account where the funds remain.

### C. Farrington's Motion to Appoint a Trustee or, Alternatively, to Vacate the Automatic Stay

9

On February 6, 2017, Farrington filed a motion requesting the appointment of a chapter 11 Trustee or alternatively, for an order modifying the automatic stay.  The Debtor filed opposition to the motion on February 16, 2017.  An initial hearing was held on February 23, 2017 and a subsequent hearing was held on March 23, 2017. The matter has been adjourned by the Court until May 11, 2017 and the Court is prepared to set a discovery schedule at that time, if necessary.

**D.  Bar Date and Proofs of Claim**

In a typical Chapter 11 case, the Bankruptcy Court sets a date by which all creditors must file proofs of claim with the Bankruptcy Court (the "Bar Date"). The Bar Date is usually quite significant as it assists the Debtor in determining whether claims have been asserted by creditors which are at odds with a debtor's books and records. By Order dated March 19, 2017, the Court entered an Order setting the Bar Date.  In accordance with the Bar Date Order, the Debtor provided notice of the Bar Date to all known creditors and parties in interest, parties to all lawsuits involving the Debtor, to governmental units and to all other persons and entities who the Debtor believes should receive notice.

The Bankruptcy Court established May 19, 2017 as the last date for non-governmental entities and August 1, 2017 as the last date for governmental entities to file proofs of claim  for amounts owed by the Debtor as of the Petition Date (the "Bar Date").  The following claims were timely filed with the Court:

| Claim No. | Claimant | Amount | Type |
|---|---|---|---|
| 1-1 | NYC Department of Finance | $104,083.69 | Secured Tax Claim |
| 2-1 | NYCTL 2016-A Trust | $227,725.28 | Secured Tax Claim |
| 3-1 and 7-1 | Alen R. Beerman | $7,102.16 | Priority Claim |
| 4-1 | New York City Water Board | $2,033.24 | Secured Claim |
| 5-2 (amended) | 33-37 Farrington LLC | $16,340,855.57 | Secured Claim |
| 6-1 | Best Air Condition Inc. | $120,615.50 | General Unsec. Claim |
| 8-1 | Linden Center LLC | $21,500,000 | Contingent Claim |

**E.  Unpaid Real Estate Taxes**

In addition to the foregoing delinquent real estate taxes, the Debtor estimates that an amount of $100,000.00 may also be due and payable for more current period(s) including for post-petition periods.

**F.  The Debtor's Post-Petition Operations**

Since the ~~Filing~~ Petition Date, the Debtor has  received rental income in the aggregate amount of approximately $200,000 against Property and has paid interest only payments to secured creditors from its Debtor in Possession account pursuant to 11 U.S.C.

§362(d)(3).[3]    The retainer received by Debtor's counsel was paid by the David Wong. The Debtor is considering its options against former tenant CCCF for unpaid rent. CCCF provided its written notice that it was vacating the Property voluntarily.    The Debtor accepted the surrender of the Property and has located a new tenant already.

During the Debtor's Chapter 11 period, the Debtor has accumulated no post-petition obligations and additional administrative expenses, other than those attributable to duly retained professionals and United States Trustee Fees pursuant to 28 U.S.C. §1930.

## G.  Retention of Professionals

On March 19, 2017, the Bankruptcy Court entered an order authoring the debtor- in-possession to employ and retain Spence Law Office, P.C. ("Spence") as the Debtor's attorneys.

## H.  Sale of the Property In Connection with the Plan and Free and Clear of Liens

The Debtor has filed a motion for private sale of the Debtor's interest in the Property to Linden Center LLC free and clear of all liens, claims and encumbrances for the sum of $20,500,000.00.  A copy of the Sale Agreement modifying and incorporating agreements dated November 10, 2016 and November 29, 2016 (the "Sale Agreement") is annexed hereto as **Exhibit F**. Consistent with the Sale Agreement, the Debtor has received a $1,450,000.00 deposit against the Purchase Price which, as agreed, was not to be held in escrow but rather, released to the Debtor upon payment.  Linden Center has recently received a firm commitment from its lender and it appears that Linden Center has the funds necessary and is preparing to close.  Per the Sale Agreement, the Closing is only subject to the approval of the sale by the Bankruptcy Court and clearance to close from Purchaser's lender's counsel.  A summary of the terms of sale are as follows:

> **SALE PRICE:**  $20,500,000
>
> **CONTRACT DOWN PAYMENT:** $1,450,000.  These funds have already been paid by Purchaser and disbursed to the Debtor per Stipulation of Settlement.
>
> **FINANCING:**  The Purchaser has already received a firm commitment from its lender which it has delivered to the Seller and has also paid the "Commitment Fee" and otherwise has sufficient cash and funds on deposit to close on the sale based on the terms hereof.
>
> **TITLE REPORT/LIENS/ENCUMBRANCES:**  Purchaser accepts the Property "As Is" subject to violations, exceptions of title, and in its current condition. All liens, mortgages and tax arrears are to be paid at closing.
>
> **NET TO SELLER:**  Global shall receive a net price of Three Million Five Hundred Thousand Dollars ($3,500,000).   This may affect the final "Sale Price" set forth above because some of the below payoffs are estimated.
>
> **CLOSING COSTS/TRANSFER TAXES.**  Purchaser shall pay all closing costs including Seller's counsel fees for the closing and for the Chapter 11 Bankruptcy Case including the transfer tax.   Notwithstanding the foregoing, transfer taxes will likely be

---

[3] Farrington's counsel advises that the check delivered on May 3, 2017 was inadvertently destroyed.   The Debtor is putting a stop payment on that check and will issue a replacement check.

exempt because it is anticipated that the sale will occur in connection with Global's confirmed Chapter 11 Plan.  The agreement provides a chart of the estimated amounts needed to close.

**CONDITIONS TO CLOSE:**  Bankruptcy Court approval of this sale and clearance of the loan to fund by the Lender's counsel.

**CLOSING DATE:**  Provided the Bankruptcy Court has approved the sale, the Closing shall take place on the earlier of (a) thirty (30) days of written notice to Purchaser from Global of Global's election to proceed with the closing notwithstanding that the confirmation of the Plan has not occurred; (b) thirty (30) days from the date the Court enters an Order confirming Global's Plan of Reorganization; (c) the date the Purchaser's loan commitment expires.  Time shall be of the essence for the Closing under (a), (b) or (c) of this paragraph.

**POST-CLOSING AGREEMENTS/CONSIDERATION:**  there are two (2) other signed agreements incorporated into the Sale Agreement, to wit:  an Agreement dated November 10, 2016 and a Stipulation of Settlement dated November 29, 2016.  The Stipulation of Settlement essentially memorializes that the Debtor will sell to Linden Center LLC and that Linden Center LLC will pay the Debtor $1,450,000 as a "no-condition" down payment on the contract.   The November 10, 2016 Agreement provides the Debtor and David Wong with additional consideration in exchange for certain services and consideration from David Wong and the Debtor.  In summary, these additional closing or post-closing terms are as follows:

    i.    Global or its affiliate shall have the right to purchase at closing a membership interest in Linden, not to exceed 20%.

    ii.    David Wong, on behalf of Linden, shall apply for an additional community facility for the Property, which the parties project at 30,000 buildable square feet.  Linden shall pay David Wong Two Million Seven Hundred Thousand Dollars to procure the additional community facility FAR, such amount to be adjusted proportionally based on the actual rental space obtained (This fee is based on yearly rent x 15x20%).  David Wong will be the project manager for this project, all costs and fees associated with the application of the additional FAR and construction shall be borne by Linden.

    iii.    David Wong, on behalf of Linden, shall apply to the BSA[4] for an additional FAR[5] for the Property, which the parties project at approximately 90,000 buildable square feet ("BSA FAR").  David Wong is entitled to initial membership (this is the same

---

[4] BSA stands for the Board of Standards and Appeals of New York City.   It was established as an independent board to grant "relief" from the zoning code.

[5] FAR stands for "floor area ratio" and this is the relationship between the total amount of usable floor area that a building has, or has been permitted for the building, and the total area of the lot on which the building stands.  A higher FAR means more buildable area on the lot.

20% to Global in paragraph (i) above )interest plus 20% in the value of the obtained BSA FAR, and the remaining members of Linden is entitled to the balance interest in the value of the obtained BSA FAR. All costs and fees associated with the application of the BSA application and construction shall be borne by Linden. David Wong will be the project manager for this project. [To avoid any confusion, this paragraph (iii) provides that if David Wong successfully obtains the BSA FAR described herein, then he will be entitled to 20% of the annual revenue generated from the additional square footage he adds to the building (the BSA FAR). Moreover, upon sale of the building, the BSA FAR would be valued separate and apart from the sale price and David Wong shall receive 20% of the value of the BSA FAR. Global's 20% interest, if it chooses to buy-in at closing as set forth in paragraph (i) above is separate from David Wong's additional interest in paragraph (iii)].

**BROKER.** The November 10, 2016 agreement also discloses that Apple Wealth Realty LLC is the sole broker of this transaction. Your affirmant has been advised that Apple Wealth Realty LLC will be due $100,000 upon the sale. I have also been advised that in the event Global exercises its 20% option at closing, it will owe 20% of this fee or $20,000.

Notwithstanding the foregoing, if for any reason Linden Center LLC is unable to perform, the Debtor is prepared to sell the Property at public auction. In the event Linden Center LLC is unable or unwilling to perform, the Debtor will elect to retain the down payment from Linden and sell the Property at auction to the bidder who makes the highest and best offer.

The Debtor is hopeful that any sale of the Property will be in connection with a confirmed Plan but the Debtor has the right to proceed with the sale absent a confirmed Plan. The respective purchaser of the Property shall acquire upon the sale, and the Debtor shall convey, all of the right, title and interest that Debtor possesses as of the closing in and to the Property free and clear of all pre-closing liens, Claims, encumbrances, other interests, debts, causes of action, obligations, liabilities, and charges of any kind, nature or description whatsoever, whether fixed or contingent, legal or equitable, perfected or unperfected except as expressly provided in the purchase agreement pursuant to Sections 363(b), (f), (k) and (m) and 1123(b)(4) and 1129 of the Bankruptcy Code (collectively, the "Liens and Claims") and all liens and claims shall attach to the proceeds of sale of the Property with the same priority and validity as existed prior to the closing on the Property. All persons and entities asserting Liens and Claims of any kind or nature whatsoever against or in Debtor or the Property, including but not limited to Class 1, 2, 3, 4, 5, 6 and 7 Claims, arising under or out of, in connection with, or in any way relating to, Debtor, the Property, or the transfer of the Property to the Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting such Liens and Claims against the Purchaser, its successors or assigns, its property, or the Property.

# ARTICLE IV.
## SUMMARY OF THE PLAN

### A.  Chapter 11 Plans Generally

Confirmation and consummation of a chapter 11 plan is the principal purpose of a chapter 11 case.  The plan sets forth the means for satisfying the claims against and interests in a debtor's estate.  A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets.  In either event, confirmation of a plan by the Bankruptcy Court makes the plan binding on the debtor, any person acquiring property under the plan and all of the debtor's creditors and equity holders, and the prior obligations owed by the debtor to such parties and/or the equity interests in the debtor are compromised and satisfied by the treatment specified in the plan.  Before soliciting acceptances of a proposed plan, however, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment in voting to accept or reject the plan.

The Debtor is submitting this Disclosure Statement to holders of Claims against or Interests in the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code.  In order to confirm the Plan, the Bankruptcy Court must independently determine that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied.  The Debtor believes that the Plan satisfies all applicable requirements of §1129(a) of the Bankruptcy Code.

In general, a chapter 11 plan must (i) divide claims and interests into separate categories and classes, (ii) specify the treatment that each category and class is to receive under such plan, and (iii) contain other provisions necessary to implement the chapter 11 plan.  A chapter 11 plan may specify that the legal, equitable, and contractual rights of the holders of claims or interests in certain classes are to remain unchanged by the liquidation effectuated by the plan. Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to vote to accept the plan.   Classes of claims or equity interests that are "unimpaired" under a chapter 11 plan are conclusively presumed to have accepted the plan under section 1126(f) of the Bankruptcy Code and, thus, are not entitled to vote.  Pursuant to section 1124(1) of the Bankruptcy Code, a class of claims or interests is "impaired" and entitled to vote on a plan, unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest." Furthermore, classes that will not receive or retain any property under the plan are conclusively deemed to have rejected the plan under section 1126(g) of the Bankruptcy Code and are also, therefore, not entitled to vote. Accordingly, only those persons who hold claims or equity interests in an impaired class that receive or retain property are entitled to vote with respect to a plan.

### B.  Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan shall classify the claims and interests of a debtor's creditors and equity interest holders. In compliance with section 1122 of the Bankruptcy Code, the Plan divides the holders of Claims into three (3) unclassified categories and seven (7) Classes of Claims, and sets forth the treatment to be provided to each Class. The Plan also identifies a single Class of Interests.  These Classes take into account the differing nature and priority of Claims against the Debtor. Section 101(5) of the Bankruptcy

Code defines "claim" as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5). A "claim" against the Debtor also includes a claim against property of the Debtor, as provided in § 102(2) of the Bankruptcy Code. 11 U.S.C. § 102(2). An "interest" is an equity interest in a debtor.

For the holder of a Claim or Interest to participate in a plan and receive the treatment offered to the class in which it is classified, its Claim or Interest must be "Allowed." Under the Plan, "Allowed" means with reference to any Claim, the amount of a Claim that has not been previously satisfied:

> i.  listed on the Schedules in a liquidated amount and not listed as either zero in  amount, disputed, contingent or unliquidated,
>
> ii.  for which a proof of such Claim was timely filed, or deemed timely filed, with  the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules,  and the Final Orders of the Bankruptcy Court establishing the Bar Dates, and not  subject to any objection to the allowance thereof within any applicable period of  limitation,
>
> iii.  as to which any objection has been interposed, to the extent such Claim has  been allowed by a Final Order,
>
> iv.  any Claim specifically identified in the Plan as an Allowed Claim or in any contract, instrument or other agreement entered into prior to the Effective Date if  approved by the Bankruptcy Court pursuant to a Final Order, or
>
> v.  any Claim allowed pursuant to section 502(d)(2) of the Bankruptcy Code.

An "Allowed Claim" shall be net of any valid setoff or recoupment. Except as otherwise  expressly provided in the Plan, the term "Allowed Claim" shall not, for the purposes of  computation of distributions under the Plan, include (i) any non-compensatory penalties, fines,  punitive damages, exemplary damages, multiple damages, treble damages, or any other Claims  or obligations that do not compensate for actual losses incurred or (ii) any other amounts not  allowable under the Bankruptcy Code or applicable law.

When referring to an Interest, "Allowed" means that such Interest is registered in the stock register, membership interest register or any similar register or schedule maintained by or  on behalf of the Debtor and not timely objected to or that is allowed by a Final Order.

The Plan categorizes the various Claims and Interests against the Debtor into the following groups:

| Claim Class | Type | Impaired |
|---|---|---|

| Unclassified | Statutory Fees under 28 U.S.C. § 1930(a)(6) | No |
| | Administrative Claims pursuant to 11 U.S.C. § 503(b) including, without limitation, Professional Fees & Expenses and Trustee Commissions. | |
| | Priority Tax Claims pursuant to 11 U.S.C. § 507(a)(8) | |
| 1 | Farrington - Secured Claim | No |
| 2 | New York City Dept of Finance  – Secured Claim | No |
| 3 | NYCTL 2016-A Trust - Secured Claim | No |
| 4 | City of New York Real Estate Taxes – Secured Claim | No |
| 5 | **Non-Tax Priority Claims Under 11 U.S.C. §507**s | No |
| 6 | **Allowed General Unsecured Claims** | Yes |
| 7 | Unsecured Specific Performance Claim of Linden Center LLC | Yes |
| 7 | Interest Holders | No |

## C.  Treatment of Unclassified Claims

The Plan provides for payment of Statutory Fees, Administrative Claims, and Priority Tax Claims, which are not required to be classified under section 1123(a)(1) of the Bankruptcy Code.

### 1.  United States Trustee Fees

There are fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) (the "United States Trustee Fees"), which is a non-classified category of Claims. The Debtor will pay all outstanding United States Trustee on the Effective Date or as soon thereafter as is practicable.

### 2.  Administrative Claims

Pursuant to section 503(b) of the Bankruptcy Code, Administrative Claims include the costs and expenses incurred by the estate during the Chapter 11 Case.  Because the Debtor's operating expenses appear to have been paid in the ordinary course of the Debtor's business during the pendency of the Chapter 11 Case, the Debtor believes that any Administrative Claims consist almost solely, if not entirely, of Professional Fee Claims.  Professional Fee Claims are those based on Claims for commissions, compensation for services rendered, and reimbursement of expenses of any Professional retained by the estate pursuant to an order  of the Bankruptcy Court. .

Except for United States Trustee Fees and Claims arising in the ordinary course of a commercial relationship with the Debtor, requests for payment of Administrative Claims, including Professional Fee Claims are required to be filed no later than 21 days after the entry of the Confirmation Order.

Holders of an Allowed Administrative Claim will be paid (a) in full on the Effective

Date, or as soon thereafter as is practicable, or (b) in a manner consistent with such other treatment as to which the Debtor and the holder of such Allowed Administrative Claim have agreed upon in writing.  The Debtor expects to owe approximately $150,000 in legal fees to Spence Law Office on the Effective Date.

### 3.  Priority Tax Claims

Priority Tax Claims consist of Claims against the Debtor described in section 507(a)(8) of the Bankruptcy Code.

Each holder of an Allowed Priority Tax Claim against the Debtor will be paid in full on the Effective Date or as soon thereafter as is practicable.

The Debtor does not anticipate any claims for priority taxes.

### D.  Treatment of Claims and Interests

The Plan divides all Claims against, and Interests in, the Debtor into Classes and provides for the treatment of such Classes of Claims and Interests.  The Classes consist of Claims and Interests, rather than creditors or equity holders, because one creditor or equity holder may hold more than one kind of Claim or Interest and § 1122 of the Bankruptcy Code requires that certain kinds of Claims and Interests be given certain treatment.

### 1.  Class 1 – Farrington Secured Claim

Class 1 consists of the Allowed Secured Claim of Farrington, the holder of a first mortgage and the Farrington Foreclosure Judgment against the Property. Farrington has filed a secured claim in the amount of $16,340,855.57 as of the Petition Date and $16,819,909.38 as of May 18, 2017.  As noted above, the Sale Price of the Property is greater than the Farrington Claim so it is submitted that the Farrington claim is fully secured.  The Debtor does not agree with all of the charges in the Farrington proof of claim and intends to dispute those charges.  Under the Plan, Farrington will be paid its full allowed claim as follows: on the Effective Date in full satisfaction of the Farrington Class 1 Allowed Claim, the Farrington Foreclosure Judgment, and any other liens and encumbrances Farrington has against the Property or the Debtor.  This payment shall be without prejudice and subject to the Debtor's rights in the Foreclosure Appeals, the Referee Appeal and the Claims Against the Farrington Parties to the extent those matters and or claims affect the amount due or paid to Farrington.
Accordingly, the Class 1 claim is unimpaired and not entitled to vote on the Plan.

### 2.  Class 2 – NYC DOF Secured Claim

Class 2 consists of the Secured Claim asserted by New York City Department of Finance in the amount of $105,000 with post-petition interest through and including the date of Closing on the Property.  The Plan provides that NYC DOF  shall be paid Cash in an amount equal to 100% of the Allowed NYC DOF amount.  Because  Class 2 is Unimpaired, holders of Allowed Class 2 Claims are deemed to have accepted the Plan  and are not entitled to vote on the Plan.

### 3.  Class 3 – NYCTL 2016-A Trust - Secured Claim

Class 3 consists of the Secured Claim asserted by the NYCTL 2016-A Trust in the amount of $227,725.28 with post-petition interest and other applicable charges through and including the date of Closing on the Property.    The Plan provides for a Cash payment in an amount equal to 100% of the  Allowed NYCTL 2016-A Trust Claim on the Effective Date. Discharge of the lien held by NYCTL 2016-A Trust is conditioned upon payment of the NYCTL 2016-A Trust claim in full.

Accordingly, because Class 3 is unimpaired, holders of Allowed Class 3  Claims are not entitled to vote on the Plan.

### 4.  Class 4 – The R.E. Tax Claims

Class 4 consists of the Secured R.E. Tax Claims which have not been filed or are post-petition claims.  The Plan provides for a Cash payment in  an amount equal to 100% of the Allowed R.E. Tax Claims.  Because Class 4 is Unimpaired,  holders of Allowed Class 4 Claims are deemed to have accepted the Plan and are not entitled to  vote on the Plan.

### 5.    Class 5 – Non-Tax Priority Claims Under 11 U.S.C. §507 – The Alen Beerman Claim.  Claims in this Class will be paid in full in cash on the Effective Date of the Plan.

Currently, there is one claim in this class.   The claim was filed by Alen Beerman who was the referee in the Farrington Foreclosure Action.  Farrington has already included this claim in its proof of claim.  It is doubtful whether the Debtor has an obligation to pay this claim except as a cost or expense of Farrington's claim.  This claim is duplicative of the Farrington Claim but will be paid on the Effective Date in cash. This class is not impaired and Class 5 claims are not entitled to vote on the Plan.

### 6.    Class 6 – General Unsecured Claims

Class 6 consists of all General Unsecured Claims. There is one claim in this class filed by Best Airconditioning, Inc. for $120,615.50.  The equipment installed by Best Airconditioning, Inc. requires service and repair on a regular basis.  The contractor has provided a verbal warranty of the service and equipment.  The Debtor has determined in its business judgment that paying this creditor over six months from the Effective Date will enable the Debtor to incentivize the contractor to complete necessary work, service and repair.  Under the Plan, holders of Allowed General Unsecured Claims will receive Cash, equal to 100% of the Allowed amount of their Claims over 6 months without interest or any contractual fees, charges or penalties.  Accordingly, Class 6 is impaired and is entitled to vote on the Plan.

### 7.  Specific Performance Claim of Linden Center LLC

Class 7 consists of the <u>contingent</u> claim of Linden Center LLC for "Specific Performance of a real estate contract of sale" in the amount of $21,500,000.  <u>If Linden Center LLC successfully closes on the sale of the Property, then this claim shall be deemed withdrawn. However, in the event Linden Center LLC fails to close on the Property, through its own inability, acts, or omissions, whether such acts are willful or not, the Debtor will not make any distribution on this Claim under the Plan and shall retain the down payment made by Linden Center LLC under the contract as well as reserve all rights and claims as against Linden Center LLC.</u>  ~~This claim shall not receive any distribution under the Plan regardless of whether Linden~~

~~Center LLC successfully closes on the purchase of the Property.~~  Accordingly, this class is impaired and is entitled to vote on the Plan.


### 8.    Class 8 – Interest Holders

Class 8 consists solely of the Shareholders' Interest in the Debtor.  Under the Plan. Shareholders will  retain their Interest in the Debtor as it existed as of the Petition Date. Because Class 8 is  Unimpaired, holders of Allowed Class 8 interest are deemed to have accepted the Plan and are  not entitled to vote on the Plan.

## D.  Unexpired Executory Contracts and Leases

Section 365 of the Bankruptcy Code allows the Debtor, subject to certain requirements including Bankruptcy Court approval, to reject, assume, or assume and assign any unexpired executory contracts and leases.  Upon the Effective Date all executory contracts and leases, other than  the Commercial Leases in effect at the time of confirmation, shall be deemed rejected as of the Petition Date.  The Debtor does not  believe that there are any other unexpired executory contracts or leases other than the Commercial  Leases.  The Commercial Leases shall be assumed and assigned in connection with the Sale after confirmation of the Plan unless the Sale occurs sooner.

**REJECTION DAMAGE CLAIM BAR DATE: Any person or entity who has a Claim against the Debtor by virtue of rejection of an executory contract may file a Claim with the Clerk of the Court, and serv~~ei~~ce such claim upon counsel for the Debtor no later than twenty-five (25) days after notice of the occurrence of the Confirmation Date. If such Claim is not filed within such specified time, it shall forever be barred from assertion against the Debtor and its estate.**

### ARTICLE V.
### IMPLEMENTATION OF PLAN

## A.  The Distribution Fund

All Distributions to holders of Allowed Claims provided for under the Plan shall be funded and paid from a Distribution Fund comprised of (a) the ~~n~~Net ~~s~~Sale ~~p~~Proceeds from the Sale of the Property and, to the extent necessary and recoverable, (b) any distributions made to the Debtor on  account of the ~~Surplus Funds~~net sale proceeds as of the Effective Date through the date of completion of all  Distributions contemplated under the Plan~~,~~, and/or (c) any other Cash on hand as of the Effective  Date through the date of completion of all Distributions contemplated under the Plan.  To be clear, a reserve shall be created for any allowed claims not paid on the Effective Date, and such funds shall be held in escrow by Debtor's counsel to ensure future payments are made.  The reserve shall be calculated and deducted from the gross sale proceeds.

## B.  Sale of Property not Subject to Transfer or Similar Tax

This Plan expressly contemplates the sale of the Property on or after the Effective Date although the Sale may occur before Confirmation. In the event the Sale takes place after Confirmation of the Plan, it shall not be taxed under any law imposing a stamp or similar tax as provided for in Section 1146(a) of the Bankruptcy Code including (a) the transfer of the Property; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any contract, Lease or sublease; or (d) the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan. All such transfers, assignments and sales will not be subject to any stamp tax, or other similar tax held to be a stamp tax or other similar tax by applicable law.

## C.  Projected Recovery of Avoidable Transfers; Other Litigation

The Debtor has examined potential avoidance actions against creditors and parties in interest and has not yet determined whether or not it will pursue any avoidance actions. Notably, there was a preference period transfer of $290,000.00 to the Debtor's attorney who was handling the pre-petition State Court Action and Foreclosure Appeals, and the Referee Appeal.  The Debtor reserves its rights regarding this payment.  The Debtor intends to proceed with, at a minimum, the Foreclosure Appeals, the Referee Appeal and the Claims Against the Farrington Parties, both before and after confirmation of the Plan.  The Debtor reserves its rights and claims against any and all of the Farrington Parties.  The Debtor also reserves its rights and claims against Linden Center LLC and its principals and members in the event Linden Center LLC fails to close on the Property.  The Debtor also reserves its rights and claims against non-creditor SDF 19 LLC, and its agents, representatives, brokers, employees, officers, members and affiliates, with respect to SDF's role in the sale of the Loan and Mortgage to Farrington.  Finally, the Debtor reserves its rights and claims against all non-creditors which exist as of the confirmation date.

# ARTICLE VI
# DISTRIBUTIONS

## A.  Distributions by the Debtor

All Distributions under the Plan shall be made by the Debtor.

## B.  Distribution Date

All Distributions under the Plan on account of Allowed Claims as of the Effective Date shall be made by the Distribution Date which is a date no later than fourteen (14) days following the Effective Date.

## C.  Delivery of Distributions

Distributions to holders of Allowed Claims shall be made: (a) at the addresses set forth in the proofs of Claim filed by such holders; (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the date on which any related proof of Claim was filed, or after the date hereof if no proof of Claim was filed; or (c) at the addresses reflected in

the Schedules relating to the applicable Allowed Claim if no proof of Claim has been filed and the Debtor has not received a written notice of a change of address.

## D. De Minimis Distributions

No payment of Cash in an amount of less than $100 shall be made on account of any Allowed Claim.  Such undistributed amount will instead be distributed to the remaining holders of Allowed Claims in the same Class.

## E. Compliance with Tax Requirements

The Debtor shall be entitled, but shall have no obligation, to deduct any federal, state or local withholding taxes from any Distribution made as reasonably appropriate.  All Persons holding Allowed <u>General Unsecured </u>Claims shall be required to provide any information reasonably requested to  effect the withholding of such taxes, including, without limitation, delivering to the Debtor a  properly executed Form W-9 or equivalent at the address provided below, and the Debtor may  withhold any Distribution absent the provision of such information or further Order of the Court.

SPENCE LAW OFFICE, P.C.
Attorneys for the Debtor
Attn: Robert J. Spence, Esq.
55 Lumber Road, Suite 5
Roslyn, New York 11576

If a Claimant does not return the completed Form W-9 to the Debtor, the Debtor will be allowed to retain Distributions to such Claimant until the appropriate tax identification information is provided.  The Debtor will provide two notices to each Claimant of its obligation to submit an IRS Form W-9 or equivalent to the Debtor.  If the Claimant does not provide a Form W-9 or equivalent to the Debtor within 60 days after the second notice is sent to the Claimant, then such Claimant's Claim(s) will be deemed forfeited and expunged and the holder of such Claim(s) will be removed from the claims register and will receive no further Distributions under the Plan.

## F. Unclaimed Distributions

Unclaimed Distributions, including Distributions made by checks which fail to be negotiated, shall be held for the beneficial holders of respective Allowed Claims entitled thereto for a period of 60 days after the respective Distribution Date.  Any Distribution remaining unclaimed or un-negotiated 60 days after the applicable Distribution Date shall be canceled (by a stop payment order or otherwise), the Claim(s) relating to such Distributions(s) shall be deemed forfeited and expunged, such Unclaimed Distribution shall be re-distributed in accordance with the confirmed plan or deposited with the Clerk of the Court in the Debtor's discretion, and the holder of such Claim shall receive no further Distributions under the Plan and will be forever barred from asserting the Claim against the Debtor or the Debtor and its professionals.  Nothing contained in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Claim other than by reviewing the proofs of Claim and filed documents.

## G. Objections to Claims

All proofs of Claim filed after the applicable Bar Date are disallowed in their entirety except to the extent they amend or modify a timely filed Proof of Claim.  Any objections to Claims shall be filed not later than fourteen (14) business days after entry of the Confirmation Order.

## H.  Disputed Claims

With respect to any Disputed Claim, the Debtor shall remit any distributions (the "Disputed Claim Reserve") until such time as the Disputed amount is either Allowed or Disallowed.  In the case of the former, the Debtor shall make a Distribution on account of the Allowed amount within seven (7) days of the Disputed amount becoming an Allowed amount unless the Effective Date shall not have not yet have occurred.

## I.  Setoff; No Waiver

Except as otherwise provided in the Plan, the Confirmation Order, or in agreements previously approved by Final Order of the Bankruptcy Court, the Debtor's estate or Reorganized Debtor, as the case may be, may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, offset against any Claim and any distribution to be made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtor or the estate may hold against the Holder of such Claim; provided, however, that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other action or omission of the Debtor or the estate, nor any provision of this Plan shall constitute a waiver or release by the Debtor or the estate of any such Claims, rights and causes of action that the Debtor or the estate may possess against such Holder. To the extent the estate fails to set off against a Creditor and seek to collect a Claim from such Creditor after a distribution to such Creditor pursuant to the Plan, the estate shall be entitled to full recovery on its Claim against such Creditor.

## ARTICLE VII.
## EFFECT OF CONFIRMATION

## A.  Binding Effect

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

## B.  Vesting of Property

All Assets of the Estate including but not limited to Property, any avoidance actions or actions to recover debts owed the Debtor and or the estate, the Foreclosure Appeals, Referee Appeal, and the Claims Against the Farrington Parties, shall vest in the Reorganized Debtor on the Effective Date.

## C.  Release of Liens

Except as otherwise provided in this Plan or other agreement or document created in connection with this Plan, all liens, encumbrances and other security interests against Assets of the Estates shall be deemed fully and completely released and discharged and all of the Assets of the Estates shall be deemed free and clear of any such liens, claims and encumbrances on and after the Effective Date.

## D.  Discharge

Except as otherwise provided by the Plan, pursuant to section 1141 of the Bankruptcy Code, on the Effective Date, the Confirmation Order shall act as a discharge of all Claims that arose prior to the Confirmation Date.

## E.  Cancellation of Instruments, Securities and Other Documentation

Except to the extent otherwise provided under the Plan or the Confirmation Order, upon the Effective Date, all Pre-Petition agreements (other than assumed contracts and third party guaranties and indemnities of the Debtor's obligations), credit agreements, Pre-Petition loan documents and Post-Petition loan documents to which the Debtor is a party, and all lien claims and other evidence of liens against the Debtor, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtor.  The holders  of or parties to such cancelled instruments, agreements, securities and other documentation will   have no remaining rights arising from or relating to such documents or the cancellation thereof,   except the rights provided pursuant to the Plan and the Confirmation Order and any rights that,  by the terms of the applicable agreement, survive the termination of such agreement.

## F.  Stay

Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all distributions pursuant to the Plan have been made.

## G.  Injunction

**Except as otherwise expressly provided in the Plan or Confirmation Order, all persons or entities who have held, hold, or may hold Claims or any other debt or liability that is discharged or Interests or other right of equity interests that is terminated or cancelled pursuant to the Plan, or who have held, hold, or may hold Claims or other debt or liability that is released pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on such Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed or transferred pursuant to the Plan against any of the Released Parties or any of their respective assets, property or estates, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets, property, or estates on account of any Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed, or transferred pursuant to the Plan, (c) creating, perfecting, or**

**enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets, property or estates on account of any Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed or transferred pursuant to the Plan, (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets, property or estate, with respect to any such Claim or other debt or liability that is released or Interest that is released, terminated, cancelled, assumed, or transferred pursuant to the Plan, and (e) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan; provided however, that such injunction shall not preclude the United States of America, any state or any of their respective police or regulatory agencies from enforcing their police or regulatory powers; and, provided, further, that, except in connection with a properly file proof of Claim, the foregoing proviso does not permit the United States of America, any State or any of their respective police or regulatory agencies from obtaining any monetary recovery, including fines, restitution or forfeiture, from any of the Released Parties, including, without limitation, the Debtor, the Estate or any of their respective assets and property with respect to any such Claim or other debt or liability that is discharged or Interest or other right of equity interest that is released, terminated or cancelled pursuant to the Plan, including, without limitation, any monetary claim or penalty in furtherance of a police or regulatory power. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets, property, and estates.**

> **Each of the injunction and release provisions provided in this Article is an integral part of the Plan and is essential to its implementation. Each of the Released Parties shall have the right to independently seek the enforcement of the discharge, injunction and release provisions set forth in this Article.**

> **The Debtor and each of its Professionals shall not have or incur any liability to any Person for any act taken or omitted to be taken in connection with the Chapter 11 Case, the formulation, preparation, dissemination, implementation, Confirmation, or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, or any contract, instrument, release or other agreement or document provided for in the Plan; provided, however, that nothing in the Plan shall (1) be construed to release or exculpate any entity from fraud, gross negligence, willful misconduct, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts, or (ii) limit the liability of the professionals of the Debtor to its clients pursuant to DR 6-102 of the Code of Professional Responsibility.**

## F. Validity of Corporate Actions

Entry of the Confirmation Order by the Bankruptcy Court shall constitute due authorization (a) required for the full validity and enforceability of the Plan and all transactions provided for in the Plan, notwithstanding any provisions of law which would otherwise require the approval of such transactions by the Debtor, the board of directors, shareholders or other constituents of the Debtor, and (b) for the Debtor to take any and all actions and execute, deliver and file all agreements, certificates, notices and other documents necessary or appropriate to consummate the transactions provided for in the Plan.

## G.  Exculpation

To the fullest extent permissible under the Bankruptcy Code, the Debtor shall neither have nor incur, and are hereby released from, any Claim, obligation, cause of action or liability of any kind or nature to one another or to any holder of a Claim or an Interest, or any other party in interest, or any of its members, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of its successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for claims which arise or relate to actions or omissions determined in a Final Order to have constituted willful misconduct or gross negligence at any time.  In all respects the Debtor and its Professionals shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be deemed released as provided herein.

## H.  Management of the Reorganized Debtor

Under the Plan, the David Wong, will continue management of the  Reorganized Debtor following the Effective Date.  David Wong is authorized to conduct the day to day business of the Debtor and to continue to prosecute the Foreclosure Appeals, Referee Appeal and pursue the Claims Against the Farrington Parties, <u>Linden Center and any other claims the Debtor may have against creditors and non-creditors,</u> after confirmation of the Plan.  <u>Subject to the availability of funds, David Wong will receive compensation of $2,500 per month as his management fee to conduct the operations of Global to the extent it is still involved in the Property and or pursuing its claims against creditors and non-creditors.</u>

## ARTICLE VIII.
## <u>CONDITIONS PRECEDENT TO THE EFFECTIVE DATE OF THE PLAN</u>

The Effective Date of the Plan will occur after each of the following conditions have taken place: (a) the closing on the Sale of the Property, and (b) the Confirmation Order has become a Final Order.

## ARTICLE IX.
## <u>RETENTION OF JURISDICTION</u>

Under the Plan, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to this Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

(b)      grant or deny any Professional Fee Claims;

(c)      determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

(d)      ensure that all payments due under this Plan and performance of the provisions of this Plan are accomplished as provided herein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of this Plan;

(e)      determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any person's rights arising under or obligations incurred in connection therewith;

(f)      modify this Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan, or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency in any Court order, this Plan, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with this Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code, this Plan;

(g)      issue injunctions, enter, implement and enforce orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan, or the Confirmation Order;

(h)      adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under this Plan and the Confirmation Order and all other matters contained herein;

(i)      administer any adversary proceeding brought by the Debtor.

(j)      enter any orders necessary to effectuate the Confirmation

**ARTICLE X.**
**PLAN CONFIRMATION**

## A.  Confirmation Requirements under Section 1129(a) of the Bankruptcy Code

A bankruptcy court may confirm a chapter 11 plan if it independently determines that the applicable requirements of section 1129(a) of the Bankruptcy Code for confirmation have been satisfied.  With respect to the Chapter 11 Plan, the applicable provisions of section 1129(a) of the Bankruptcy Code require that:

(i)  The Plan complies with the applicable provisions of the Bankruptcy Code. 11  U.S.C.

§ 1129(a)(1).

(ii)  The Debtor has complied with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2).

(ii)  The Plan has been proposed in good faith and not by any means proscribed by law. 11 U.S.C. § 1129(a)(3).

(iv)  Any payment made or to be made by the Debtor under the Plan for services or for costs and expenses in, or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been disclosed to the Bankruptcy Court; and any such payment made before Confirmation of the Plan is reasonable, or if such payment is to be fixed after Confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable. 11 U.S.C. § 1129(a)(4).

(v)  The Debtor, as proponent of the Plan, (i) has disclosed the identity and affiliations of all individual proposed to serve, after confirmation of the plan, as a director or officer of the Debtor, and (ii) "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy. 11 U.S.C. § 1129(a)(5).

(vi)  Each Class of Claims or Interests has accepted the Plan or is Unimpaired under the Plan. 11 U.S.C. § 1129(a)(8).

(vii)  Except to the extent that the holder of a particular Claim has agreed to a different treatment of its Claim, the Plan provides that Allowed Administrative Claims, including Professional Fees, and Priority Tax Claims will be paid in full on the Effective Date.  11 U.S.C. § 1129(a)(9).

(viii)  Confirmation of the Plan is not likely to be followed by the liquidation of the Debtor or the need for further financial reorganization. 11 U.S.C. § 1129(a)(11).

(ix)  All United States Debtor Fees have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan. 11 U.S.C. § 1129(a)(12)

## B.  Plan and Debtor Compliance; Plan Proposed in Good Faith. 11 U.S.C. §1129(a)(1)-(3)

The Debtor believes (i) that the Plan will satisfy all of the applicable statutory provisions of the Bankruptcy Code, (ii) that the Debtor, as plan proponent, has complied or will have complied with all of the provisions of the Bankruptcy Code, and (iii) that the Plan is being proposed in good faith and not by any means forbidden by law.

## C.  Payment of Services, Costs or Expenses. 11 U.S.C. §1129(a)(4).

Under the Plan, all payments made or to be made by the Debtor for services or for costs and expenses have been disclosed or are subject to Bankruptcy Court approval.

## D.  Management of the Reorganized Debtor. 11 U.S.C. §1129(a)(5).

David Wong will continue to manage the Reorganized Debtor.

**E.  Acceptance of Plan by Each Class Plan or Absence of an Impaired Class. 11 U.S.C. § 1129(a)(8).**

Classes 6 and 7 are impaired under the Plan.  A ballot is annexed hereto as **Exhibit G** for impaired classes 6 and 7 to vote on the Plan.

**F.  Treatment of Priority Tax Claims and Administrative Claims. 11 U.S.C. § 1129(a)(9)**

All Allowed Priority Tax Claims, and Allowed Administrative Claims will be paid in full on the Effective Date or as soon thereafter as is practicable.

**G.  Plan Feasibility. 11 U.S.C. § 1129(a)(11)**

Based on the anticipated minimum gross proceeds to be realized from the Sale, Cash in the Debtor's possession, the Distribution  Fund as of the date of this Disclosure Statement is estimated to be $20,240,000.  Based on the Claims filed to  date that are not currently Disputed, the estimated Professional Fees incurred or to be incurred, total Distributions under the Plan are $17,~~1~~030,000 leaving a surplus of approximately $~~3,210,000.00~~3,089,385.00.  The below claim amounts and available funds amounts are estimated and subject to change based on any claims objections, accrued interest on secured claims and other factors.

| Assets | | Paid At Closing Per the Plan | |
|---|---|---|---|
| Gross Sale Proceeds (due @ closing) | $19,~~10~~080,000[6] | Claims Paid @ closing | Amount |
| Down Payment (remaining) | $1,160,000[7] | FARRINGTON Claim | $16,600,000.00 |
| | | NYCDOF Claim | $105,000.00 |
| | | NYTL Tax Claim | $230,000.00 |
| | | R.E. Tax Claim (est) | $100,000.00 |
| | | DOB/ECB/MISC (est) | $145,000.00 |
| | | Professional Fees (est) | $~~1~~50,000.00 |
| | | Claim Reserve | $120,615 |
| | | Debtor (Surplus) | ~~3,210,000~~3,089,385 |
| | | | |
| Tot. Available/Distributed @closing | $20,~~23~~40,000 | | $20,~~32~~40,000 |

**H.  Payment of United States Trustee Fees. 11 U.S.C. § 1129(a)(12)**

The Plan provides for payment of all United States Trustee Fees in full on the Effective Sate or as soon thereafter as is practicable.

---

[6] The amount due at closing to the Debtor is separate from any other closing costs to be borne by the Purchaser.  In addition, the Sale Price will increase or decrease to ensure that the Debtor receives the $3,500,000 "net" after all creditors and costs are paid.

[7] The Debtor received the down payment from Linden Center LLC in the amount of $1,450,000.00.  Approximately $290,000 was transferred to Victor Tsai, Esq. during the preference period as noted above.

## ARTICLE XI.
## TAX CONSEQUENCES OF CONFIRMATION

Confirmation may have federal income tax consequences for the Debtor and holders of Claims and Interests. The Debtor has not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder. Creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain. Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash and/or stock under this Plan.

### A. Tax Consequences to the Debtor.

The Debtor may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

### B. Tax Consequences to Unsecured Creditors.

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest. The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands. A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.

## <u>CONCLUSION</u>

The Debtor believes that the Plan meets all the requirements for confirmation under section 1129 of the Bankruptcy Code and that this Disclosure Statement provides adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code.

Dated: May 29, 2017
       Roslyn, New York

                     GLOBAL UNIVERSAL GROUP, LTD.
                     Debtor and Debtor in Possession

                     By:__/s/ David Wong__
                          David Wong, President

Dated: May 29, 2017
       Roslyn, New York

                     SPENCE LAW OFFICE, P.C.
                     Attorneys for the Debtor

                     By:_____/s/ Robert J. Spence_____
                     Robert J. Spence, Esq.
                     55 Lumber Road, Suite 5
                     Roslyn, New York 11576